Okay, the next case is number 16, 1125 Sigma Tau Health Science Incorporated against the Thank you, your honors. John Monaco from Porter Wright on behalf of Sigma Tau Health Sciences. We believe the primary issues raised in our appellate brief are clear. There's been clear error committed below. The court below failed to apply Chapter Note 3 to Chapter 29. This is a case where we're dealing with two competing classifications in a single chapter. It boils down to the question of whether this is a vitamin or not, and you're not even disagreeing about the definition of a vitamin. I'm sorry, we're not? Disagreeing about the definition of what's a vitamin. Well, there was disagreement below, your honor. Well, we don't care whether there was disagreement below. In this court, there's no disagreement. You and the government agree on the definition, no? We agree, and we made a prima facie case below that it was a vitamin. And that's all we had to do to get the chapter note to apply. We apply the chapter note. Our argument prevails. That's the case. I can take you through the prima facie evidence that we presented below that the court relied upon. The court relied upon Webster's Dictionary, relied upon an admission by Customs themselves that it was a vitamin when it was discovered. It relied upon... Let me tell you what I think this boils down to. There is proof in the record that for infants and neonates that this is a vitamin, because that class of individuals can't produce this substance on their own. Okay? The question then becomes, does that make this a vitamin or not if the adult population doesn't require exogenous sources of this? That seems to me to be the issue here. Am I wrong? I think that's a very narrow reading of the definition of vitamin. I don't think there's anything in anybody's definition of vitamin. There have been several submitted to the court that says it can only be a vitamin for an adult, or it can only be a vitamin for an adult healthy adult human or healthy adult average human. I understand that. But what you're saying is that for the neonate and infant population, you need exogenous sources for this. And that makes it a vitamin, even though for adults, you don't need it. There are certain classes of adults who need supplementation as well. Also, I will say that at least one of the documents that the government attached to in the joint appendix indicated that only about 25% of carnitine is produced in the body, and the rest has to be produced exogenously. So I don't think it's very limited just to infants or hemophiliacs or people with heart conditions or the unhealthy. I think it's broader than that. But I agree that there is a large body of literature pertaining to neonates, but I would not exclude others. Where is the document that says that healthy adults only produce 23%? 25%. 25%. One moment. It's cited in the government's appellate brief at page 9. It's Biosyn Carnitine Group Sigma Tau, the Next Generation of Carnitine. It's at page 488 of the joint appendix. It says, L-carnitine is a naturally occurring compound found primarily in meat and dairy products. The body can also make a certain amount of carnitine, approximately 25%, through endogenous synthesis in the liver and kidneys. We've also cited another study at page 1125 of the joint appendix by a Dr. Chazat, in carnitine supplementation in hemodialysis patients. And that document says, quote, carnitine sources are mainly meat and dairy products and represent 75% of carnitine supply. So those are at least two documents, in this case, that belong upon which the parties rely that show that there is significant requirement of supplementation in the diet. So we think there's clear error in the court failing to apply Chapter No. 3. We think we established a prima facie case below. The court cited at least four pieces of evidence establishing our prima facie case. The only expert in the case, Dr. Bass, was our expert. He submitted at least six other pieces of evidence to support a prima facie case. If you take all that prima facie evidence, apply Chapter No. 3, we think it's very clear that there's reversible error and that the case should be reversed. If you have any questions, I'll be glad to answer them, or I'll reserve my time. Okay. Thank you, Mr. Monica. Mr. Vanderweide? Your Honor, may it please the Court? Your Honors, may it please the Court? Your Honor, you're correct. The only issue is whether or not, with these specific neonates, whether that rises the level of vitamin. And infants, I think. And infants. But it's only certain infants. It's up to four months old, and those infants, at least the articles that were cited in Plano's reply brief, only those infants that are having trouble is because of IV feeding. They're not producing enough carnitine on their own. But that article itself is the use of carnitine in pediatric nutrition. It's called carnitine a nonessential nutrient in adults, but it could be a conditionally essential nutrient in certain pediatric populations. Okay, but so why doesn't it make it a vitamin if it's an essential nutrient for certain neonates or for neonates generally? Why doesn't that satisfy the definition of a vitamin? It's vitamin-like, but it's conditionally essential. And this is the term that the medical community, the scientific community... had the same need as the neonates, right? If the majority of the adult population required supplementation of carnitine for their health, then that would be a vitamin. You say the majority. So are we to apply some sort of level here, a percentage? What would be in a 50%, 25%? Why not 2% of the population? I'm deferring to what the medical literature and the scientific establishment describes carnitine as a conditionally essential nutrient. That's how it's defined by the Linus Pauling Institute. Is a cereal a vitamin to any percentage of the population? I don't know what the percentage of the population is that requires... Well, we do know it does for certain infants, correct? For certain infants... Well, why is that not enough? Because it's only conditional up to four months old for only a certain subset of those infants. Why is that not enough? I mean, for that subset, it is a vitamin. Because it has vitamin-like properties for a limited period of time for just those specific individual infants... Why is that not enough? Why is that not enough? Because the definition of a vitamin requires that there be an exogenous supplementation or production. There's no recognition in the medical and scientific community that carnitine is a vitamin. Well, I think your statement in answer to that is not correct. This is not limited to infants who have IV feeding. It says neonates rely on exogenous supply of L-carnitine because their capacity for androgenous synthesis is still poorly developed. It's not limited to a subclass. It's all neonates, right? I was looking at the use of carnitine in pediatric nutrition. Which article are you looking at? Carmeier. Is that the physiological role of L-carnitine? It's 1089. Both of these articles recognize that the endogenous synthesis abilities of all neonates are poorly developed. Okay, so why isn't that enough? Because it is only limited and conditionally essential just for that segment of the population. Even on your theory, which seems to me to be extreme, you can argue that the vitamin classification is less specific than the quaternary ammonium salt classification, which the record says, and I think anyone can take note, includes millions or possibly billions of compounds. Yes, Your Honor, but we only get to relative specificity if it's presumed that... That's the issue, is it not? No, the issue in this case is just whether or not carnitine, or the products at issue, not just carnitine, which are L-toro and glycocarn, it's not just one component of carnitine. But the alternative is classification as a quaternary ammonium compound, is it not? And there's no... So those are our choices. Exactly, there's no dispute whether or not these products are quaternary ammonium salts. Along with a billion other compounds. And so we have, and we also have the rule of specificity and the listing on the table, and all the rest of it, to which I've seen no response by the government. Because we don't get to relative specificity, Your Honor, because there's a chapter note at play. And that chapter note comes in before we get to GRI 3A. And that chapter note says that, all things being equal, if these goods are prima facie classifiable as quaternary ammonium salts, and as vitamins, then the tie goes to Sigma Tau, because it's the heading later in order. Our argument is that these goods are not prima facie classifiable in two or more headings. Because these goods are not a vitamin. We're not just looking at L-carnitine. What about use? Are these goods used as a vitamin? They are not used as a vitamin. The record that was developed before the trial court was that these goods are performance enhancing ingredients in workout supplements. You take these goods, they increase the nitric oxide in your blood. But in a commercial sense, or in the sense of the marketplace, are they marketed as vitamins? No. They're marketed as just ingredients in workout supplements. So whether or not they're single use, whether it's taken a pill with just these ingredients in them, or whether they're mixed in with sort of a multi-ingredient package that someone would take to go increase their production when they're working out, whether how much they could bench press or exercise, or to benefit the recovery. So was there any evidence in the record, and I don't know the answer to this, but the evidence in the record that these products are known as vitamins in the marketplace? They are not known as vitamins in the marketplace. The only link to whether these things are known as a vitamin in the marketplace is you go buy the stuff at the vitamin shop, but the vitamin shop also sells many different products, dietary supplements. Not all dietary supplements are vitamins. So that's the channel of trade in which these things are sold. You could buy them on Amazon and the Internet as well. But the people that are using these items are using them for workout. That's what they're doing. Is that pertinent to determining whether they're a vitamin or not? It's not necessarily germane because this is not a use provision. It's whether or not this good meets the standard, meets the definition of a vitamin. So when we look at 29.32, 79.50, that's not a use provision? It's a hybrid. There's an aonominate, whether it's a provitamin or a vitamin, or whether a substance is used as a derivative of a vitamin. There's no claim here that these things are being used as a derivative of a vitamin. But they fail to satisfy the definition of a vitamin because a vitamin must be produced from an exogenous source to either supplement something that the body can't produce itself. We can produce carotene, but most animals can't produce it. Infants can't. That's the problem. That's why the medical establishment deems certain populations, whether it be people with primary deficiencies, you have a genetic abnormality which means that you can't produce enough, very small subject to the population, a secondary deficiency, kidney failure because of that. We're not talking about that population. We're talking about normal humans. And normal neonates and infants need this from exogenous sources. I would still even defer to the articles themselves, which say any article that these are considered, when looking at the use of carnitine in pediatric nutrition, recognizing that certain infants and newborns require supplementation of carnitine. Still, those articles are not calling, these sources are not calling carnitine a vitamin. They're calling them conditionally essential. The articles themselves, none of the articles. It meets the scientific characteristics of a vitamin. On the one hand, you're arguing the scientific characteristics of a vitamin, and it seems that this meets those characteristics because it's needed by a certain percentage of the population, albeit a small one. Well, I think it meets that definition of a vitamin for that limited population. Why shouldn't that be enough? I do not feel comfortable claiming that this is a vitamin when the National Research Council on the Academy of Sciences, the FDA, all of these articles are not calling this substance vitamin. They draw that distinction, and we are drawing that distinction as well, that for those segments of the population, it's just conditionally essential. It's conditionally essential until it's no longer essential. And even then, even with a conditionally essential group, say the neonates or primary, secondary deficiencies, carnitine is now being taken as a drug. It's being prescribed by a doctor. They're not taking L-toro. They're not taking glycocarn. Well, that's irrelevant, right? But that's what's at issue is the full chemical composition of these products. These products are not just carnitine. See, now you're arguing the use. And on one hand, you don't want to go there and argue the use part of a hybrid classification. And now you seem to want to take us to that particular point. I don't think I'm going to use your honor. I think I'm just looking at what was actually imported. What is the imported merchandise? It's a carnitine base, yes, but it's rendered chemically stable by the other ingredients in there. I don't recall any argument before that the other ingredients made this not a vitamin. We brought that argument to the trial court, and we put it in our brief as well, that the court must analyze the goods in their imported condition. Where does your brief argue that because of these other ingredients it doesn't constitute a vitamin? That's in our brief, your honor, at page... Page 28. Page 28 to 30. We made that argument that the court has a duty to classify the merchandise in the condition that it's imported. And the condition that it's imported are these bulk drums of white powder, of acetyl L-carnitine taurinate hydrochloride and glycine propionyl L-carnitine hydrochloride. These two separate 25-kilogram drums is what they're bringing in. Later on, they're reformulated with single-use capsules or in workout products. That's what they're being reformulated, but they're not just bringing in L-carnitine. You say that L-carnitine is the sole biologically active component. It is the sole biologically active. But in order for these products to be taken in and ingested, they have to be rendered chemically stable. And so that's what the other... It's not that the other ingredients in these products have no function. They do have a function. They're rendering them a chemically stable... Wouldn't that be true of all importations of L-carnitine, that they have to be rendered stable? It depends. I can imagine a scenario where L-carnitine is imported just on its own to be used as a medicament with a certain subset of the population that needs carnitine for that limited purpose, as prescribed by the care of a doctor. Doctors aren't prescribing these items. That's not happening at all. I think the important distinction here is that line between a vitamin and a conditionally essential nutrient. And that's what the Linus Pauling Institute, the FDA, the National Research Council of the National Academy of Sciences, the vast majority of authoritative scientific and medical establishment has drawn that line. And that's the distinction. So let's say this is a close case. Can we really say that Judge Carman committed clear error in his decision? I think it's an error as a matter of law, because it's about whether or not this product meets the legal definition of a vitamin. And these products do not meet the legal definition of a vitamin. So it's a legal finding that the court erred. If it meets that definition, just to a certain extent. But it, again, not recognized, doesn't meet that definition, that's why the true definition of carnitine as a conditional essential nutrient, not as a vitamin. If there are no further questions, Your Honor, and no further questions around, then thank you for your time. Thank you, Mr. Van der Weyden. Mr. Lonergan? Yes, just a few statements in rebuttal. As Your Honors are probably aware through our briefing, we've been shooting a moving target as to what the government says is a vitamin from day one. This part about neonates being insufficient, that was not in the original protest denial. That was not in any of the discovery denial. That's something they're making up in briefing. There are established definitions for vitamins. Our expert says these products meet them. When our expert says that, what do they do? They add different terms that are necessary in their mind in order to create... Well, they cite information sources that are what we call prestigious sources. Sure. NIT and NIH, Harvard, and others that don't look at carnitine as a vitamin, don't list it as a vitamin. And we cite many that do. And all we have to show is a prima facie case that it is a vitamin. We don't have to conclusively establish on a duel to the death under Chapter No. 3 that there are no authorities out there that say it's not a vitamin. We presented a prima facie case. We had an expert. He had several pieces of evidence, several equally valid scientific studies. He's the only one who offered two academic definitions of vitamins and said, hey, these substances meet that. He also presented other evidence from the Merck Index, from the Sigma-Aldrich chemical sales catalogs of common usage of this term, of these products, that vitamin Bt is carnitine and vice versa. We proposed customs. Thirty-six witnesses, they admitted that these were prestigious. If I wanted to buy some of this product and walk into one of these retail shops, what would I say? Let me have some vitamin Bt. L-carnitine. You'd probably say, let me have L-carnitine. But not vitamin Bt. You could ask for vitamin Bt and they would know what it is because it has the same definition. But L-carnitine is the more common name to the average layperson. But we don't think that precludes it from being a vitamin to any extent. So do you agree that the name vitamin Bt is a misnomer? No, do not. Our expert testified that that was what it was first called and that it's called that up to the present time. He listed several sources as recent as 2010, 2013, that still call L-carnitine vitamin Bt. But you just said that I would go in and I would order carnitine, not vitamin Bt. No, you could ask for either. I'm saying the more probably widely known name would be L-carnitine. When it was imported, was it imported as vitamin Bt? When it came in. On the declaration and all? No, on the MSDS sheet that came in with it, it said vitamin on the MSDS sheet. And then on the MSDS sheet that's distributed with it from our client to the final processors, it's called a vitamin as well. For advertising purposes, they may go by other names in the shop. But it doesn't mean it's not a vitamin. And it goes beyond. Another point I'd like to bring up is that it applies to more than just neonates. I think that's the major application. But we've cited in our brief scientific studies that point to hemophiliacs needing it, the government itself. So it doesn't have to be part of a normal human population rather than people with particular needs? No. We all need and use carnitine. Whether we have to have it supplemented is a different issue. Well, that's what I'm talking about. It doesn't have to be supplemented to the entire population. I can tell you that one of the government's own sources cited on page 15 of their pellet brief, they cite one page and they attach it to their cross motion for summary judgment. If they had attached the whole article, which they should have, they would say this. The doctor in the study they cite from Vitamin Connection March 2006, that doctor who's a board certified cardiologist and a fellow of the American College of Cardiology, he said in their article, I think everybody on the planet should take some form of carnitine. People really should take 500 milligrams, 250 milligrams twice a day because they're really not going to get enough in the diet to provide what the body really needs. That's from one of their own doctrines. It didn't limit to neonates. It didn't limit to anyone. If you have other questions, I'll be glad to answer them. Thank you. Thank you both.